UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KASEAN CALVIN WILSON,

        Petitioner,        Case No. 1:17-cv-715

v.        Honorable Paul L. Maloney

TONY TRIERWEILER,

        Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner Kesean Calvin Wilson presently is incarcerated at the Bellamy Creek Correctional Facility. Petitioner pleaded guilty in the Jackson County Circuit Court to two counts of armed robbery, MICH. COMP. LAWS § 750.529, and one count of possessing a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS § 750.227b. According to the facts admitted by Petitioner at the plea hearing, Petitioner entered the Jackson City County Credit Union on the morning of October 10, 2012. (Plea. Tr., ECF No. 1-1, PageID.112.) He was armed with a pistol and intended to rob the credit union. (*Id.*, PageID.113.) Petitioner admitted at the plea hearing that he had demanded money from tellers Heather Schorndorf and Karen Garver and that he had placed both in fear.[1] (*Id.*, PageID.112-113.) In addition, Petitioner acknowledged that a bank customer, Charles Bennett, was present at the bank at the time of the robbery. Petitioner admitted that Bennett had money on the counter, which had been withdrawn from Bennett's account, and that Petitioner used his pistol to place Bennett in fear in order to take the money. (*Id.*, PageID.113-114.)

In exchange for his guilty plea, the prosecution agreed to dismiss a third count of armed robbery, one count of bank robbery, MICH. COMP. LAWS § 750.531, and one count of third-degree fleeing and eluding, MICH. COMP. LAWS § 257.602a(3). On October 31, 2013, the court sentenced Petitioner to two prison terms of 14-30 years on the armed-robbery convictions, to be served consecutively to a term of 2 years on the felony-firearm conviction.

---

[1]The Court notes that the armed robbery against Heather Schorndorf was dismissed as part of the plea agreement.

Petitioner sought leave to appeal to the Michigan Court of Appeals, claiming that he was denied his rights to due process when the sentencing court considered an unreliable needs assessment in determining the length of the sentence. Petitioner argued that his motion to withdraw the plea should have been granted, as he was promised a lower sentence in the plea bargain. In an unpublished order issued on July 18, 2014, the court of appeals denied leave to appeal for lack of merit in the grounds presented.

Petitioner sought leave to appeal to the Michigan Supreme Court, raising the same issue presented to and rejected by the Michigan Court of Appeals. The supreme court denied leave to appeal on February 3, 2015.

According to the petition, on January 15, 2016, Petitioner filed a motion for relief from judgment in the Jackson County Circuit Court. In his motion, Petitioner raised seven claims: (1) the conviction for armed robbery against bank customer Charles Bennett violated double jeopardy, because Bennett did not separately possess monies that were taken in the bank robbery; (2) ineffective assistance of trial and appellate counsel; (3) violation of due process; (4) illusory plea bargain; (5) trial court's abuse of discretion; (6) prosecutorial misconduct; (6) involuntary guilty plea; and (7) insufficiency of the evidence. The trial court denied the motion on June 2, 2016, and denied reconsideration on September 27, 2016.

Petitioner sought leave to appeal to both the Michigan Court of Appeals and the Michigan Supreme Court, apparently raising the same claims presented in his motion for relief from judgment. In the supreme court, he also added a claim that he is being held in violation of a United States treaty, the International Covenant on Civil and Political Rights (ICCPR), and the Thirteenth Amendment. The Michigan appellate courts denied leave to appeal on October 14, 2016, and July 25, 2017.

On or about August 7, 2017,[2] Petitioner filed his habeas petition. He raises the following four grounds for relief:

> I. Defendant's plea[] was illusory and involuntary in violation of his 5th & 14th Amendments due process rights.
>
> II. Defendant was deprived of his 6th [A]mendment [right] of effective Assi[s]tance of counsel, based on Trial Court's abuse of discretion.
>
> III. Defendant's V Amendment Right was violated when he was convicted of the same offense twice, by way of illusory plea barg[a]in.
>
> IV. Defendant is being held in violation of U.S. Treaty (ICCPR) & XIII Amendment of the U.S.

(Pet., ECF No. 1, PageID.6-7, 9-10.)

## **Discussion**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court

---

[2]Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner dated his application on August 7, 2017, and it was received by the Court on August 9, 2017. Thus, it must have been handed to prison officials for mailing at some time between those dates. For purposes of this opinion, the Court has given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification

that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed

to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

     I.   <u>Ground I: Illusory and Involuntary Plea & Ineffective Assistance of Counsel</u>

In his first ground for habeas relief, Petitioner contends that his plea was illusory and involuntary, because the second count of armed robbery to which he pleaded guilty, the robbery of Mr. Bennett, lacked essential elements necessary to convict Petitioner. Specifically, he contends that the bank teller had not yet given Mr. Bennett the cash she was counting out for him. Instead, when Petitioner came in, the teller set the money she was counting on the counter and added the contents of her own till, before giving the money to Petitioner. Petitioner also argues that, because the teller had not completed the record of the transaction, the facts do not support a conclusion that Petitioner actually took the money from Mr. Bennett. Finally, Petitioner contends that he was charged and convicted of armed robbery against Mr. Bennett as a result of the ineffective assistance of his trial attorney in investigating and challenging the facts supporting the plea.

     A.  Illusory and Involuntary Plea

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21,

30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Petitioner's claim does not challenge the power of the state to bring him into court. Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

For a plea to be valid, the defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411

U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel may render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady*, 397 U.S. at 749, and may consider such factors as whether there is evidence of factual guilt. A plea agreement is deemed involuntary and unknowing if a defendant is unaware that the prosecution's promise is illusory. *United States v. Randolph,* 230 F.3d 243, 250–51 (6th Cir. 2000). Illusory representations made by the prosecutor to induce a defendant to waive his right to trial and enter a plea have been found to constitute coercion justifying the withdrawal of a plea. *Spearman v. United States,* 860 F. Supp. 1234, 1249 (E.D. Mich.1994).

Petitioner argues that his plea was illusory (and therefore involuntary) and that counsel was ineffective in failing to challenge the illusory nature of the plea agreement. Petitioner's claim that the plea was illusory is dependent on his assertion that he did not actually commit a separate armed robbery of Mr. Bennett, because he had no intent to separately rob Mr. Bennett and he took nothing from Mr. Bennett's

possession. Petitioner's ineffective assistance of counsel claim is dependent on the same assertion, because Petitioner complains that counsel was ineffective in failing to challenge the basis for the armed-robbery charge involving Bennett.

To the extent that Petitioner claims that no factual basis existed for his plea to the armed robbery of Mr. Bennett, his claim is not cognizable on habeas review. The requirement that the court establish a factual basis for a guilty plea is a creature of rule, not the federal Constitution. While states are free to adopt procedural rules requiring a factual basis as Michigan has done in MICH. CT. R. 6.610(E)(1)(a), the Federal Constitution does not mandate them to do so. *See Alford*, 400 U.S. at 37-38; *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *accord Meyers v. Gillis*, 93 F.3d 1147, 1152 (3d Cir. 1996); *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc), *implicitly overruled on other grounds by Custis v. United States*, 511 U.S. 485 (1994)).

Moreover, even were the claim cognizable, it would be rejected as meritless. Petitioner's responses to the trial judge, given under oath at the plea hearing, directly contradict his present assertion that Mr. Bennett was not a victim of a separate armed robbery because Mr. Bennett never actually possessed the monies. Petitioner admitted that he had pistol and that Mr. Bennett had money on the counter, which Petitioner took by placing Mr. Bennett in fear. (Plea Tr., ECF No. 1-1, PageID.113-114.) Where a trial court has scrupulously followed the required procedure for taking a plea, "the defendant is bound by his statements in response to that court's inquiry." In *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (internal citations omitted); *see also Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992); *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993) (defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy). The trial court here

accepted Petitioner's solemn plea, under oath, after he had been fully advised of his rights and the nature of his agreement. Petitioner demonstrates no basis for revisiting the truthfulness of his own plea testimony.

Furthermore, Petitioner cannot demonstrate that his plea was illusory. To the contrary, by pleading guilty, Petitioner obtained the dismissal of three charges, including a third armed-robbery charge and a bank-robbery charge, both of which were extremely serious offenses. (*See* Plea Tr., ECF No. 1-1, PageID.107-108.) The guilty plea therefore resulted in substantial benefit to Petitioner. The Sixth Circuit has rejected a claim of illusory plea where far less benefit accrues. *See, e.g., McAdoo v. Elo*, 365 F.3d 487, 497-98 (6th Cir. 2004) (holding that a plea is not illusory, even if the only benefit is an agreement to a parolable life sentence, rather than a non-parolable life sentence, however unlikely parole may be).

A review of the plea transcript attached to the petition squarely demonstrates that Petitioner's plea was knowing and voluntary. Petitioner testified that he understood the rights he was waiving, understood the charges to which he was pleading guilty, understood the maximum sentences he faced (life or any term of years), and understood the plea agreement, through which he obtained the dismissal of three of the six charges against him. He also expressly stated on the record that had had adequate time to discuss the matter with his attorney and that he had no difficulties understanding what was happening. He affirmed that his guilty plea was made freely, understandingly and voluntarily, and that he received no other promises or threats. (Plea Tr., ECF No. 107-112.) The record of the plea agreement fully demonstrates that the plea was made knowingly, voluntarily, and understandingly, and that Petitioner's plea agreement was not illusory.

For these reasons, the state courts' denials of his claim concerning his plea agreement constituted and entirely reasonable application of Supreme Court precedent.

### B. Ineffective Assistance of Counsel

To the extent that Petitioner claims his attorney was ineffective, he also fails to demonstrate constitutional error. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice'

requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000). As the Court previously discussed, Petitioner's claims about the illusory nature of his plea agreement are meritless. Petitioner freely and voluntarily elected to plead guilty to three charges in exchange for the dismissal of three other charges. Because Petitioner's plea was knowing and voluntary, he cannot show that trial counsel's performance was ineffective for failing to raise facts contrary to the plea.

Moreover, Petitioner at no time meets his burden of showing that he was prejudiced by counsel's performance. He fails even to allege that he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59. Under the circumstances faced by Petitioner at the time he elected to plead guilty, Petitioner obviously decided to enter guilty pleas to three counts, regardless of a then-existing argument[3] about the factual support of one count, so that he would not go to trial on all six counts. Because Petitioner fails to allege or show that he would have gone to trial rather than accept the plea agreement, he fails to support the prejudice prong of the *Strickland* standard.

II.  Ground II: Denial of Pretrial Request to Appoint New Counsel

---

[3] Petitioner acknowledges that the argument about the robbery of Mr. Bennett was presented by his accomplice's attorney, but was rejected by the court at the preliminary examination. (*See* Mem. of Law in Supp. of Pet., ECF No. 2, PageID.61; Excerpt from Prelim. Examination Tr., ECF No. 1-1, PageID.94-95.) As a consequence, the argument was known to Petitioner's trial counsel and required no further investigation. Counsel acted reasonably in not reiterating an argument that had been rejected by the court.

In his second ground for relief, Petitioner argues that he was denied his Sixth Amendment right to counsel of his choice, when the trial court abused its discretion in denying his motion for substitution of counsel. He also argues that appellate counsel was ineffective for failing to raise the issue in his application for leave to appeal his guilty plea.

Petitioner's claim was relinquished by his guilty plea. Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. As the United States Supreme Court, explained,

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. In other words, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea. *See also Werth v. Bell*, 692 F.3d 486, 496-98 (6th Cir. 2012) (holding that the denial of the petitioner's Sixth Amendment right to represent oneself was waived by the petitioner's subsequent guilty plea). As earlier discussed, Petitioner entered knowing and voluntary guilty pleas to the two convictions. Because Petitioner's claim that he was denied his right to substitute counsel was foreclosed by his later valid guilty plea, his second habeas ground is without merit.

Petitioner's related claim of ineffective assistance of appellate counsel is equally meritless. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing

out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Here, Petitioner claims that his appellate attorney should have challenged the denial of his motion to substitute counsel. The Sixth Circuit long has recognized that "'appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). *See also Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Because his claim concerning his motion to substitute counsel is meritless, appellate counsel was not ineffective in deciding not to raise it.

For all of these reasons, Petitioner is not entitled to relief on either prong of his second habeas ground.

      III.     Ground III: Double Jeopardy

In his third ground for habeas relief, Petitioner argues that he has been twice convicted of the same offense. Petitioner bases his claim on the same theory that underlies his first habeas ground: that

he committed no separate robbery of Mr. Bennett, because Mr. Bennett did not yet possess the funds he was seeking to withdraw.

In *Broce*, 488 U.S. at 570-74, the Supreme Court expressly rejected the notion that a petitioner who pleads guilty to two offenses may subsequently challenge his a conviction on double-jeopardy grounds. As with the other rights discussed *supra*, a defendant's knowing and voluntary admission of guilt at the time of the plea hearing relinquishes his right to challenge one or more convictions on double jeopardy grounds. *Id.* "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." *Id.* at 570. "Relinquishment [of the right to raise double jeopardy] derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses, but from the admissions necessarily made upon entry of a voluntary plea of guilty." *Id.* at 573-74.

Because Petitioner knowingly and voluntarily admitted his guilt to the armed robbery of Mr. Bennett, he relinquished his double-jeopardy claim. His third habeas ground therefore will be denied.

IV.     Ground IV:  Thirteenth Amendment & ICCPR

In his final ground for habeas relief, Petitioner contends that he is being subjected to involuntary servitude, in violation of the Thirteenth Amendment and the International Covenant on Civil and Political Rights. Petitioner argues that, because he was not properly convicted of the charges to which he pleaded guilty, his continued incarceration violates both the Thirteenth Amendment and international human rights.

The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, *except as a punishment for crime whereof the party shall have been duly convicted*, shall exist within

the United States, or any place subject to their jurisdiction." U.S. CONST., am. XIII, cl. 1 (emphasis added). As previously discussed, Petitioner's challenges to the validity of his guilty plea are meritless. Petitioner knowingly and voluntarily pleaded guilty to the offenses for which he remains incarcerated. Because Petitioner's entered a valid guilty plea, he was "duly convicted" of the offenses on which he remains incarcerated. By its terms, therefore, the Thirteenth Amendment does not bar his continued incarceration.

Finally, the ICCPR does not provide an independent basis for challenging custody under § 2254, "because its provisions are not self-executing, and therefore not judicially enforceable 'law' of the United States." *Bannerman v. Snyder*, 325 F.3d 722, 724 (6th Cir. 2003) (citing *Buell v. Mitchell*, 274 F.3d 337, 372 (6th Cir. 2001)); *see also* U.S. Senate Resolution of Advice and Consent to Ratification of the International Covenant on Civil and Political Rights, 138 Cong. Rec. 8068, 8071 (1992) (United States declaration that Articles 1 through 27 of ICCPR are not self-executing); CURTIS A. BRADLEY & JACK L. GOLDSMITH, TREATIES, HUMAN RIGHTS, AND CONDITIONAL CONSENT, 149 U. Pa. L. Rev. 399, 446–451 (2000) (discussing legality of non-self-execution declarations). As a consequence, Petitioner's claim under the ICCPR is meritless.

### Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial

showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the

Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated: August 29, 2017  /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge